MORRIS METZGER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The purpose of Section 12, of sub-Chapter 13, of the Criminal Code of 1868, which provides that "no person whose opinions are such as to preclude him from finding any defendant guilty of an offence punishable with death shall be compelled or allowed to serve as a juror on the trial of such an offence," is to exclude from the jury in capital cases any person who, from scruples of conscience or some reason other than the want of sufficient proof, would refuse to find a verdict of guilty.

2. Four petit jurors had been accepted and sworn when the State Attorney learned that one of them, who had been examined on his *voir dire*, had, in a conversation shortly before the finding of the indictment, remarked that he was opposed to capital punishment,

31

and argued that it would be better to imprison the accused for life than to hang him, and had, in another conversation as to the case, stated in substance that he was "opposed to capital punishment under certain circumstances, and if he was a juror would not go for capital punishment." Upon motion of the State Attorney, made before proceeding further, and supported by an affidavit as to each conversation, the Circuit Judge set aside the juror as incompetent : *Held*, 1st, that setting him aside was not error ; 2d, that setting a juror aside under such circumstances is not the mere arbitrary exercise of power by the Judge, but is the exercise of judicial discretion, and his action should not be reversed unless there appears to be a departure from the exercise of a sound discretion.

3. Whether the circumstances attending a confession, or a conversation in which the accused has made statements showing his knowledge of the time and manner of the killing, the *weapon used*, and the motive influencing him and evidencing his guilt, are such as entitle the same to be received in evidence as the deliberate and voluntary statement of the accused, is a question for the court to decide. The usual practice is to ascertain these circumstances before the admissions or statements are permitted to go to the jury ; but if such inquiry is not made in advance it may be made afterwards, and if it appear that the confession or statement was not voluntary, or was induced by improper influences, the testimony should be excluded from the consideration of the jury. Where the circumstances are developed by the witness in his detail of the confession or conversation, or from such inquiry, and the confession or statements appear to have been made voluntarily, and not to have been induced by improper influences, they should not be withdrawn or withheld from the jury.

4. Under the act of 1877 (Chapter 2096), requiring a Circuit Judge to charge the jury only upon the law of the case, it is improper for him to charge that there is no conflicting evidence in the case ; but, as in the case at bar, there was, in fact, no conflicting evidence, and the charge did not operate to the prejudice of the accused : *Held*, Not to be a material error affecting the judgment. Chapter 2096 and Chapter 138 distinguished.

5. The statement in the charge that "in addition to the circumstantial evidence offered in this case, is also what *is said to be* the confession of the accused in relation to his connection with the murder of Samuel Moo e," is not a charge that certain facts are proved, nor a violation of Chapter 2096.

6. Such statement coupled with the remark that "admissions or confessions are strong evidence against a party," qualified by the observations that "in circumstantial evidence there must be a clear connection with the event or fact charged, and the circumstances connecting the person with the event, and that confessions must have been made without any effort to obtain such from either fear or promises of reward in any manner; in other words, it must be freely made without inducement or threat," are correct propositions, and are not instructions as to what facts are proved, nor as to the conclusions to be drawn therefrom, beyond the application of rules of law to the evidence.

7. It is not error to refuse to give instructions asked by a party when the same have been already given in substance by the Judge in his charge to the jury.

8. Where instructions containing several propositions are requested it is not error to refuse to give the whole if they contain a single erroneous proposition.

9. The refusal of the Judge in charging the jury to instruct them that a majority of them may recommend the prisoner to the mercy of the court under the act of 1872 (Chapter 1877), which recommendation reduces the penalty to imprisonment for life in the State Prison, is not error. Either the counsel or Judge may read the act to the jury if it is desired, but the Judge is not required by law to give such instruction as a part of the charge.

Writ of Error to the Circuit Court for Brevard county.

Metzger was indicted for murder in the first degree. After the arraignment and plea of not guilty four petit jurors were selected, accepted and sworn, among others one Hoke. The State Attorney, afterward and before other jurors were called, informed the court that since the examination of Hoke on his *voire dire* he had been informed that Hoke had previously expressed an opinion concerning the case, and had declared that he was opposed to capital punishment, and would not, if he was a juror, go for capital punishment. Affidavits in support of the suggestion were read, upon which the State Attorney moved that Hoke be set aside as incompetent. The affidavit of Parker stated that a few days before the finding of the indictment, in a

conversation with Hoke, the latter had said that he "was opposed to capital punishment, and argued with deponent that he thought it would be better to imprison Metzger for life rather than to hang him." The affidavit of Albee stated that in a conversation with Hoke about three weeks before concerning the murder deponent expressed himself strongly concerning the crime, and declared that if Metzger committed the crime he ought to stretch, meaning to hang ; whereupon Hoke replied that he was opposed to capital punishment under certain circumstances, and that if he was a juror he would not go in for capital punishment, or words to that effect. Whereupon the Judge set aside the said Hoke from the jury, and the defendant, by his attorney, excepted thereto.

II. On the trial Mills O. Burnham, a witness for the State, was asked, " Please state what the conversation was that took place between you and Morris Metzger (accused), giving what each of you said as nearly as you can recollect it ?"

This question was objected to on the ground that it is not shown by the witness that such statements were made voluntarily, without any force or any promises or any other influences addressed to the mind of the accused, or that such statements were made before or after the accused was charged with the crime or arrested, which must be shown before the statements or confession of the accused are submitted to the jury for their consideration as evidence. The objection was overruled, the court stating that the objection is not made at the proper time. To this ruling an exception was taken. The witness had just stated that he was acquainted with the accused, and had seen him on the night after the murder of Samuel Moore ; had conversation with Morris Metzger ; did not make any threats to him on that occasion. Then the above question was asked and objected to as stated.

Witness Burnham then detailed a conversation with the accused in relation to the killing of Moore, which testimony was strongly against him, showing his knowledge of the time and manner of the killing, and the motive and the weapon used. One reason he gave was that " Moore had not given him as much whiskey as he wanted;" another was that " Moore knew too much about him;" another was that " it was done for money." Other pointed testimony was given by Burnham, and there was no cross-examination. The further testimony showed that the declarations of the accused were made voluntarily and without any inducement or compulsion whatever. The defendant introduced no testimony or statement on oath.

III. The court charged the jury, among other things, as follows : " In this case there is no conflicting evidence, and in addition to the circumstantial evidence offered in this case is also what is said to be the confession of the accused in relation to his connection with the murder of Samuel Moore. Admissions or confessions are strong evidence against a party, and more so when unexplained or not denied."

To this portion of the charge defendant's counsel excepted.

IV. The defendant's counsel presented to the Judge certain instructions, covering ten pages of manuscript, which they prayed might be given in charge to the jury. Some of it was pertinent to the evidence and the law, and all of it that was material and pertinent to the case was contained in the charge of the court, which was very full. It is unnecessary to spread them upon the record here.

The court declined to give the instructions as presented, and the defendant excepted.

A motion for a new trial was denied, and sentence of death pronounced by the Judge.

To review this judgment a writ of error was issued.

The errors assigned are—1st, that the court discharged the juror Hoke after being chosen and empanelled upon the ground stated; 2d, in admitting the testimony of M. O. Burnham to the declarations or admissions of defendant; 3d, in charging the jury as above stated; 4th, in refusing to give the instructions prayed for by defendant's counsel, and 5th, in refusing a new trial.

*John W. Price* for Defendant in Error.

*The Attorney-General* for The State.

THE CHIEF-JUSTICE delivered the opinion of the court.

1. In respect to the first error assigned, the discharging of the juror Hoke on the ground that he had declared in reference to this defendant and the case that as a juror he would not go for capital punishment, but thought it would be better to imprison Metzger for life, it is difficult to discover any violation of duty on the part of the court. The statute says, "no person whose opinions are such as to preclude him from finding any defendant guilty of an offence punishable with death shall be compelled or *allowed* to serve as a juror on the trial of such an offence." Laws 1868, p. 108, §12.

Here is an express statute disqualifying those whose opinions are such as would prevent them from convicting persons of capital offences from setting on juries in such cases. Here two persons make oath in his presence that Hoke had said that if he were on the jury he *would not* go for capital punishment, in other words, he would not be an instrument of inflicting the penalty of death, and he makes no denial of the charge that these were his opinions.

One of the best methods of ascertaining the opinions of men is "by the expression of them." If there is any bet-

ter mode it has not been suggested.. The expression of his opinion here in effect is, that he would not find the accused guilty, even if guilt be proved, unless assured that the penalty would not be death.. The object of the statute is to prevent persons going upon a jury who would refuse from scruples of conscience to find a verdict of guilty, or for some reason other than that of a want of sufficient proof, and to procure juries who would be governed by their oaths to find according to evidence. See 2 Mason, 105.

There are cases where it has been held that the expression of the juror, that he " would not like " to have a man hung, was not sufficient to show him incompetent, or that he would not find a verdict upon the evidence. (Smith vs. The State, 55 Miss., 410.) But it has been held in most of the States that one who has conscientious scruples against capital punishment was incompetent as a juror in a capital case, upon the principle that the law will not compel a man to violate his conscientious convictions.

In this case the juror had been called, accepted and sworn, but the jury was not full when the objection was made, and there is nothing showing that the jury empanelled was not a fair jury, or that there was not a fair trial.

The setting aside of the juror in this case was not the mere arbitrary exercise of power by the judge. Being present and obliged to exercise his judgment on the moment, much should be allowed to his discreet judgment called discretion, and " unless there is a departure from the exercise of a sound discretion by the court in the matter of excusing jurors this court cannot consider it error." 16 Fla., 562; 2 Mason, 91; 8 Ala., 302. It is unnecessary to multiply authorities upon the general subject.

2. The admission of the testimony of Burnham to the conversations with the accused, called " admissions " or confessions," is assigned for error. There was no confes-

sion by him that he was guilty of the crime. His statements are with reference to certain facts which may have been, and perhaps were, quite as convincing of guilt as direct confessions of guilt.

The testimony of Burnham was a detail of his conversations with the accused, and the manner of the detail of such conversations and the circumstances under which they were had, showed sufficiently whether they were voluntary or induced by any improper influence. It clearly appeared from the testimony of Burnham that no undue influence had induced the accused to converse or answer questions. It is for the court to determine whether the circumstances attending such admissions or confessions are such as that they should be received as the deliberate and voluntary statements of an accused person. The usual practice is to make the inquiry before the admissions or statements are shown, but if this inquiry is not made in advance it may be made at any time, and if it shall appear that the statements were not voluntary, or were induced by improper influences, the testimony should be excluded from the consideration of the jury. The true rule is that the circumstances under which the declarations or admissions were made should be shown, and if they appear to have been voluntary to submit the evidence to the jury, and if otherwise to exclude it. The question was sufficiently settled in Simon vs. The State, 5 Fla., 285, 295 ; Dixon vs. The State, 13 Fla., 636, 643-4, and citations ; King's case, 40 Ala., 314 ; Bob's case, 32 Ala., 560.

The testimony was properly submitted to the jury, it appearing that the declarations were made without any improper influence having been exerted to induce it.

3. The fifth error assigned relates to that portion of the charge excepted to. It is insisted that in this the court charged not alone " upon the law of the case, that is upon

some point or points of law or exceptions to evidence aris-
ing upon the trial of said cause," (Laws 1877, Ch. 2096,)
but upon the character and bearing of the evidence, and in-
dicated that the evidence tended to prove the guilt of the
accused.

The Judge commenced the paragraph excepted to with
these words: "In this case there is no conflicting evi-
dence." It is difficult to say that this is not a plain declar-
ation that the testimony is harmonious in that there is no
conflict in the facts shown, or contradiction by witnesses of
the testimony of each other, or of any other fact appearing
in evidence. If there were contradictory statements of
witnesses it would be error to charge the jury that there
were none, because it is with the jury to determine whether
there were conflicting statements, and to try to reconcile
them, and to determine the truth. The statement to the
jury that the testimony of witnesses does not conflict is
therefore assuming the province of the jury, and this is pre-
cisely what the law forbids. The question then is, whether
this is an error which operates to the prejudice of the de-
fendant? for if not it is not an error that should affect the
judgment.

The act of 1848, Ch. 138, Sec. 8, provided that charges
made by Judges to juries in all criminal cases "shall be
exclusively on points of law, and that any violation of this
section shall be deemed and construed to be error, from
which a writ of error may be prayed as of right." Under
this section it is clear that the foregoing portion of the
charge would be deemed error and result in reversing the
judgment.

The act of 1877, however, repeals the eighth section of
the act of 1848, and in re-enacting the requirement that
the charge shall be confined to points of law has omitted
the words "any violation of this section shall be construed

to be error," &c., so that the error of the Judge will not affect the judgment, unless as in other cases the error is material, affecting injuriously the rights of the accused. This was held in Brown vs. The State, 18 Fla., (decided at the present term) and cases there cited.

Looking through the testimony given fully and at length in the record, we do not find that there was the least contradictory or conflicting testimony whatever. The defendant adduced no testimony and made no statement on his oath of the facts of the case.

There was, therefore, nothing in this part of the charge which could operate to his prejudice or affect the verdict. Northing further was said by the Judge to the jury which can be held to be contrary to the spirit or letter of the statute in relation to the testimony.

He says: "In addition to the circumstantial evidence offered in this case is also what is said to be the confession of the accused in relation to his connection with the murder of Samuel Moore. Admissions or confessions are strong evidence against a party, and more so when unexplained or not denied."

This it is insisted by the plaintiff in error is erroneous, in that it charges that certain facts are proved, &c. We do not so understand it. The Judge speaks of circumstantial evidence in the case. This is true, there was circumstantial evidence, and the counsel desired a charge upon it as such. The Judge then says, "there is *what is said to be* the confession of the accused," &c. The Judge does not say it is a "confession," but speaks of it as what is so called; a very appropriate method of calling attention to the testimony which relates to the conversations with the accused in relation to the crime alleged against him.

We can discover no violation of the rule in the language used, and certainly nothing which could in any way influence the verdict.

Then it is complained that the Judge added, in connection with the circumstantial character of the evidence and the declarations of the accused, " admissions or confessions are strong evidence against a party when unexplained or not denied." It is due to the Judge that the further language used by him in this connection be given as elucidating his position, viz : " Observing that in circumstantial evidence there must be clear connection with the event or fact charged, and the circumstances connecting the person with the event, and that confessions must have been made without any effort to obtain such, either from fear or promises of reward in any manner, in other words, it must be freely made without inducement or threat."

These are correct propositions, and clearly indicate that the court did not intend the jury to understand him as instructing them upon the construction of facts proved or conclusions of fact to be drawn from such proof, beyond the application of rules of law to the facts.

While it is true that admissions and confessions of accused persons should be received and weighed with great caution as to the motives which induced them and the condition of the accused, yet when such admissions are shown to be entirely voluntary they are, in connection with circumstances corroborating them, " strong evidence." The principle upon which the confessions of prisoners are received in evidence is based upon the presumption that a person will not make an untrue statement against his own interest. 1 Phil. Ev., 9th Ed., 397; Roscoe Cr. Ev., 7 Am. Ed. 38, *et seq.*

We, therefore, find no error in the charge to which exception was taken.

4. The sixth error is assigned upon the refusal of the Judge to give the instructions prayed by defendant. In examining these voluminous instructions we find that the

Judge gave in his general charge everything contained in them which is material to the case, and to have given them again would be but an unnecessary repetition, and there was no error in refusing such repetition. There were embodied in these instructions some propositions that were manifestly erroneous. For instance: "The confession of a person made before he is arrested, or any charge made against him which has come to his knowledge, * * * is under the most favorable circumstances very weak and *worthless* evidence." The "confession" in the present case was not shown to have been made under the circumstances mentioned, and if it had been it was very strong and convincing in connection with other circumstances proved. The exception was to the refusal of the Judge to give the whole of these instructions, and if there was an unsound proposition in them it was not error to refuse so to give them.

5. The last proposition of these instructions was that the court should instruct the jury that "a majority of the jury may recommend the prisoner to the mercy of the court, which reduces the extreme penalty, in case of a verdict of guilty of murder in the first degree, to imprisonment for life."

While it would be well for the Judge in all cases to inform the jury to this effect by reading to them if requested the act of 1872, Ch. 1877, it might prejudice the accused in some instances to give such an instruction *in his charge*, because the jury might well infer that in the opinion of the court the crime had been committed, and that he deemed it necessary to instruct them as to the penalty which might be regulated by the jury in the form or contents of their verdict of guilty of murder in the first degree.

But the Judge is not required by law to give any instruction to the jury on the subject, and therefore no error

would have occurred by his refusal. Counsel may read the act to the court and jury if they desire to do so, and the Judge may give it to the jury if desired.

The foregoing covers all the points made upon the motion for a new trial, except that the verdict was contrary to the evidence. Upon reading the whole testimony we are satisfied that the verdict of the jury is right.

The judgment is affirmed.