Wm. H. Ashmead, Clarence H. Ashmead, Martin Griffin, Appellants, vs. Emily R. Wilson, as Executrix of Converse Parkhurst, Deceased, and James Y. Wilson, Her Husband, Appellees.

1. In an ejectment suit the description of property in a deed introduced as evidence must correspond with the description of the land described in the pleadings sufficiently to establish their identity. When identity really exists, but is not apparent from the language, parol proof may be introduced to show that although the description of the land in the deed and pleadings is different, yet that the same land is described in both proof and pleadings.

2. In a suit in ejectment by the executor of A. for a tract of real estate of which A. was proved to be in possession for a long time prior to his death, the character in which such executor sues not being denied, any possession by the executor of said real estate

after the death of A. and before suit, will be presumed to be by the executor *as* executor.

3. A plaintiff in ejectment may recover upon proof of prior possession against one found in possession of the land without title.

4. It is not error to refuse to admit in evidence a certified copy of a judgment; an authenticated copy of the whole record, or the record itself should be produced.

5. A charge which instructs the jury that a deed which is in evidence shows a fee simple title in an *estate*, is erroneous.

6. A charge to a jury in a suit in ejectment by an executor *as such*, that they should find in their verdict that the plaintiff has a *fee simple title* in the land sued for, is error.

7. A charge to a jury which assumes the truth of a material allegation which is in dispute, usurps the prerogative of the jury.

8. When the description of land sued for in the pleadings is not supported by description in the deed introduced as evidence, an instruction to the jury that the *deed* shows title to the property in suit, is error.

9. The act of December 20th, 1859, authorizing a recovery in an action of ejectment "of the land in controversy, together with mesne profits," combined the action of ejectment with the common law action of trespass *vi et armis* for mesne profits.

10. In this action damages for the detention of the land may be recovered from the initial date of the detention to the trial of the cause.

11. Where A. went into possession of the land in controversy on the 14th of June, 1880, and B. took joint possession with A. on the 13th of December, 1883, and both are sued for the recovery of the lands and for mesne profits, a joint judgment against them for profits prior to the time of their joint possession, and when A. alone was in possession, is erroneous.

12. In the action for mesne profits, damages for waste and dilapidation, in addition to mesne profits, may be recovered under proper allegations in the declaration.

Appeal from the Circuit Court for Putnam County.

The original decision of this court in this cause was rendered at the June term, 1885. On petition of appellees, a rehearing was granted, and, at the January term, 1886, the

court affirmed its former decision reversing the judgment of the court below.

The facts of the case are stated in the opinion.

*Randall, Walkers & Foster* for Appellants.

*A. W. Cockrell & Son* for Appellees.

The Chief-Justice delivered the opinion of the court:

This is an action of ejectment by the appellees in the Circuit Court of Putnam county to recover from the appellants a lot of ground in the city of Palatka. The court gave a judgment on a verdict of a jury in favor of plaintiffs below from which the defendants here prosecute their appeal. Appellants assign as errors the instructions of the court to the jury and the refusal to admit evidence, all of which are noticed in the opinion of the court.

The first error assigned is that the deed of Greeley to C. Parkhurst does not describe or identify the land mentioned in the declaration and there was no evidence tending to identify it. The land sued for is described as follows : " Water lot number two, situate in the town of Palatka in Putnam county, Florida, and described in the original map of said town as that lot or parcel of land bounded as follows: Beginning at the southwest corner of lot No. 3, formerly owned by Converse Parkhurst and now claimed by Martin Griffin, on the east side of Water street and running southerly along Water street, 87 feet thence easterly to the edge of the St. John's river, thence northerly along said edge 113 feet to the southeast corner of said lot No. 3, thence westerly to the point of beginning, embracing also all land lying between said easterly and westerly lines produced to the

channel of said river, containing one-half acre more or less."
The description of the land deeded to Parkhurst by Greeley,
is as follows : " Beginning at the south corner of the prem-
ises now owned (1857) by Converse Parkhurst, on the east
side of Water street and running southerly along Water
street 87 feet, thence easterly to the edge of the St. John's
river 88 feet, thence northerly along the edge of the river
113 feet to the southeast corner of the premises now owned
by Converse Parkhurst, and thence westerly 132 feet to the
place of beginning on Water street."

This deed taken alone does not show the identity of the
land described in the declaration with the land described
in the deed. We think from the description of the land
in the deed, although it designates a point of commence-
ment as the " south corner," that from the subsequent
language the " *southwest* " corner was plainly intended.
But we do not see how the jury could infer that the "south-
west corner of the premises, now owned (1857) by Con-
verse Parkhurst, on east side of Water street," which is
the language of the deed, is the same point of beginning
as the "southwest corner of lot No. 3, formerly owned by
Converse Parkhurst on east side of Water street," the lan-
guage of the declaration. If the identity existed, and did
not appear from the language of the deed, proof should
have been adduced that the lot on east side of Water street,
owned by Converse Parkhurst in 1857, was now known as
lot 3 on the east side of said street.

There was no objection to the introduction of the deed,
and it is only objected to here after excepting to a refusal
of the court below to grant a new trial, one of the grounds
for which it was asked being that " the verdict is not sup-
ported by the evidence," that it was insufficient to support
the verdict of the jury. But without the deed there was
sufficient evidence to authorize the jury to find a verdict,

JANUARY TERM, 1886.        259

Ashmead et al. v. Emily Wilson, as Executor, &c.—Opinion of Court.

in the absence of title in the defendants, of all the land that such evidence showed that Parkhurst was in possession of at the time of his death. A plaintiff in ejectment can recover on proof of prior possession against one not showing a better right or an intruder. 73 Ala., Dothard vs. Denson, 541 ; McCall vs. Doe *ex dem.* Pryor, 17 Ala., 533. Teasdale swore that he knew the lot *in suit ;* that it was in the possession of Converse Parkhurst in 1857, and that he kept possession until after the war ; did not know when he died. The evidence of other witnesses show the possession of it, subsequent to the death of Parkhurst, which occurred in December, 1872, by his executors and the collection of rents by them.

The defendant objects, however, to the evidence of the witness which tends to prove that Wilson and wife, or Converse P. Devereux, were in possession of the lot as executors. We think it fair to presume, excluding the testimony of witness as to collecting the rent and holding the land as executors, that from the fact that the deceased was in possession of the lot in his lifetime, and the plaintiffs were admitted by operation of rule 59 to be the executors of Parkhurst, and the absence of any evidence that possession of the executors of Parkhurst was as individuals in their own right, that any possession by them after the death of Parkhurst was in their representative capacity. We think the jury, from this evidence, could have found a verdict against the defendants if no deed from Greeley to Parkhurst had been introduced.

There was no error in refusing to permit the certified copy of a judgment of Woods against Devereux, executor, and Emily R. Wilson, executrix, to be read in evidence to the jury. It was not competent evidence. " It was part only of a record." "The whole record, or an authenticated or sworn copy of the whole, should be produced." Walls

vs. Endell *et al.*, 20 Fla., 86 ; Stark and wife vs. Billings, 15 Fla., 318.

The court erred in charging the jury " that the deed introduced by the plaintiffs showed a fee simple title in the ' estate of Parkhurst,' and they should find in their verdict that the plaintiffs have a fee simple title to the land sued for." An estate is property and incapable of holding titles, nor could the plaintiffs *as executors* hold a fee simple title. A mere statement of these rulings is sufficient, without argument, to carry the conviction that they were erroneous. The latter instruction provided a recovery was had might have been without injury to the defendants, but the language in which the charge is delivered trenches two stiongly on the province of the jury as to finding facts.

Though this instruction is erroneous for the reason pointed out, yet it seems proper to say that the verdict should state what estate in the land it was that Parkhurst had, and the plaintiffs, in their representative capacity, are entitled to recover.

The charge was erroneous also in saying that the " deed " showed a fee simple title to the property in suit. The deed alone, without supplementary proof, did not show identity of land sued for and land described therein.

The last error assigned is that there was no proof to support the judgment against the Ashmead brothers for mesne profits for 53 months, or for any period of time anterior to the suit.

The evidence shows that Griffin took possession of the property June 14, 1880. There is nothing to show a joint possession of Griffin and the Ashmeads until December 13, 1883. The judgment is joint against all the defendants for the detention of the property from June 14, 1880, until November, 1884—the time of the trial. The statute (McClellan's Digest, page 480,) authorizes the joinder of an action

JANUARY TERM, 1886. 261

Ashmead et al. v. Emily Wilson, as Executor, &c.—Opinion of Court.

for mesne profits with an action of ejectment. It becomes necessary to determine what form of action was adopted by the statute. Was it the action for use and occupation, or the action of trespass for mesne profits? Both of these actions were in frequent use in common law proceedings. We do not think the statute contemplated an action for use and occupation, because such an action could only be maintained when the possession of the tenant was permissive and when the claim for rents and profits arose from contract either expressed or implied. There is but one obstacle in deciding that the action meant by the statute was the common law action for mesne profits, and that is the form of declaration prescribed therein, which would seem to be more in the nature of a declaration in an action for use and occupation than one for trespass for mesne profits, which was for damages. But this consideration is overborne by the language employed in the first section of the act, which is as follows: "To entitle the plaintiff to recover the land in controversy, together with mesne profits." At the common law the plaintiff could not bring his action for mesne profits until after he had recovered possession of the land by an ejectment. It was plainly the object of the statute to do away with the necessity of bringing two separate actions, and of postponing one of them until the determination of the other, and to provide for a final settlement, both as to the land, and damages for the detention thereof, in one action. If this is the object of the statute, and we think it plain, there is another reason for holding that the statute meant the action of trespass for mesne profits. In this mixed action it has been decided that a recovery of the profits can be had from the time of the taking possession of the land by defendant to the trial of the cause. White vs. St. Guirons, 1st Minor, 331; Lehre vs. Sumter, 3d Brevard, 19; Lehre vs. Murray, 2d Brevard, 5; Avent vs.

Read, 2d Port., 480 ; Cummings *et al.* vs. McGehee, 9th Port., 349; Masters vs. Eastes, 3d Port., 368; Shumaker vs. Nelms, Adm'r, 25 Ala., 126. While in an action for use and occupation the profits could only be recovered up to the time of the commencement of the suit, and a second action would have to be brought for the profits accruing from the commencement of the suit until the restoration of possession. By the action of trespass for mesne profits, also damages for waste and dilapidation (Chitty on Pleadings, Vol. 1, page 216) could be recovered, and by combining this form of action with an action for ejectment a full and complete settlement of the entire controversy from the date of the detention of the land to the verdict of the jury in the trial can be had, which was, we believe, the result intended by the statute. In determining the validity of this judgment, then, we must have recourse to the same rules and principles that govern in the action of trespass for mesne profits at common law. The proof is that Griffin had possession of the property from the 14th June, 1880, until the 13th December, 1883. There was no evidence that the Ashmeads were in possession of or detained the property during this time. The plea of not guilty admits the possession, on the last mentioned day, of Griffin and the Ashmeads, which we may reasonably presume continued up to the trial. The judgment was against all the defendants jointly, for detaining the property from the 14th June, 1880, to the time of the verdict. This judgment cannot be sustained. The only judgment that could properly be rendered against them jointly would be for the term of their joint possession. For the time that Griffin detained the land, and with which the Ashmeads had no connection, a joint suit against him and the Ashmeads could not be maintained. The legislatures of other States have provided for several judgments in actions of this

kind against each defendant, according to the duration of their respective detentions of the land sued for. We have no such provision.

Judgment reversed and new trial ordered.