JOHN PINSON, PLAINTIFF IN ERROR, VS. THE STATE.
OF FLORIDA, DEFENDANT IN ERROR.

1. In the offense of lewd and lascivious association and cohabita-
tion, under section 7, page 375 McClellan's Digest, there is in-
cluded both lewd and lascivious intercourse and a living or
dwelling together as if the conjugal relation existed between
the parties.

2. In order to convict the defendants of lewd and lascivious as-
sociation and cohabitation, the evidence must satisfy the jury
beyond a reasonable doubt that said defendants were not mar-
ried to each other, and that they lived or dwelt together as
though the conjugal relation existed between them in lewd and
lascivious intercourse ; the jury are the sole judges of what
facts and circumstances constitute such a living together, and
in a case where the lewd and lascivious intercourse depends
upon circumstances, the trial judge trenches upon the pro-
vince of the jury if he attempts to substitute his inference
from the facts of the case for what might be theirs.

3. An exception taken to a portion of a charge must be considered
in connection with the remainder of the charge on the same
subject, and if the charge, taken as an entirety, is free from
the objection urged, the exception will not be sustained.

4. It is a settled rule that a general exception to a charge, or a gen
eral exception to several charges, will not be good if the charge
or any of the charges excepted to contain a correct proposition
of law applicable to the case.

5. It is not error to refuse to give instructions asked, though they
contain correct propositions of law, if the judge has already
given correctly in substance such instructions.

6. A recital in a motion for a new trial of itself does not afford evi-
dence that the matters recited transpired during the trial.

| | |
|---|---|
| 28 | 735 |
| 28 | 12 |
| 28 | 546 |
| 28 | 735 |
| 29 | 254 |
| 29 | 427 |
| 28 | 735 |
| 31 | 172 |
| 31 | 233 |
| 31 | 239 |
| 31 | 335 |
| 28 | 735 |
| 32 | 497 |
| 28 | 735 |
| 34 | 180 |
| 28 | 735 |
| 33 | 299 |
| 28 | 735 |
| 35 | 829 |
| 28 | 735 |
| 37 | 250 |
| 28 | 735 |
| 38 | 16 |
| 38 | 52 |
| 39 | 441 |
| 28 | 735 |
| 42 | 562 |
| 42 | 575 |
| 28 | 735 |
| 48 | 65 |
| 48 | 155 |
| 28 | 735 |
| 52 | 72 |
| 52 | 93 |
| 52 | 95 |
| 28 | 735 |
| 53 | 458 |
| 55 | 184 |

Writ of Error to the Circuit Court for Madison county.

## STATEMENT OF THE CASE.

Plaintiff in error and Maggie Johnson were indicted at the Fall Term, A. D. 1890, of the Circuit Court for Madison county, for lewd and lascivious association and cohabitation, and at the Spring Term, A. D. 1891, after arraignment and plea, were convicted of the offense charged in the indictment.

The testimony, as certified to us by the bill of exceptions, was as follows :

Randall Johnson, a witness for the State, testified : I know John Pinson and Maggie Johnson (the witness points them out) ; they are not now, nor have ever been married to each other. I lived for two or three years about one-fourth of a mile from John Pinson. In February, 1889, Maggie Johnson came to live at Pinson's house, and has lived there ever since, and is living there yet ; she had then one child ; I have seen them together going to and coming from church and other places ; I often called at the house ; Pinson always occupied a room on the west end of the house. I do not know where Miss Maggie slept. About fifteen months after Miss Maggie came there she had a baby. About seven months after Mr. Pinson was married again ; just before he was married I had a talk with Miss Maggie ; she asked me if the father could take

her baby away from her if she were to swear the child to him; I said, "no, I don't think so, since it is a girl; but why do you ask, does Pinson threaten to take it away from you?" she said, "I did not say who the father was." I went there one night, and Maggie and Pinson were in his room; Maggie got sleepy after awhile, and Pinson said, "go to bed Maggie;" I got up soon thereafter and went off; I left them there to-gether. Cross-examination: I never saw anything in-decent or suspicious between Maggie and Pinson; do not know whether Miss Maggie was hired or not by Pinson. Pinson's mother-in-law and her son and Pinson's little girl by his first wife, and also my brother, who was hired by Pinson, lived in the same house.

Webb Carraway, for the State, testified that Miss Maggie lived in Pinson's house ever since February, A. D. 1889; that she came there with one child. Pinson's house is a double log-pen house with a passage between and shed-rooms; one of the shed-rooms was occupied as a bed room by the hired man, and the other served as a kitchen and dining room. The east side of the house was a bed room, and Pinson's mother-in-law and her son slept in it; and the west end of the house was also a bed room; it had two beds; Pinson, with his child, and Maggie Johnson and her child slept in that room; I knocked at the door of that room every morning to get the keys to feed the stock with, and

47

Miss Maggie passed them to me through the crack in the door. About fifteen months after Miss Maggie came there she had a baby ; on the night of her confinement I went for the doctor ; Pinson sent me, and gave me a horse to go on. He attended on Maggie. Miss Maggie often spoke to me about the baby ; she told me sometimes that Pinson was the father of it, and sometimes Sam Johnson. Mr. Pinson was married some seven months ago. Miss Maggie stays there yet. Miss Maggie and Pinson are not married. Cross-examination : Miss Maggie was hired by Pinson ; she cooked and washed.

Defendant Pinson made the following statement : I hired Miss Maggie to take care of my house ; my wife's mother was too old, being sixty-five years of age. I wanted some one to take care of her and my child. I had nothing wrong to do with Miss Maggie, and am not the father of her child.

The defendant, Maggie Johnson, stated that " the reason I slept in the same room with Mr. Pinson is, that it was the only room with a fire place, and I wanted one on account of my baby and child." This was all the testimony.

The court charged the jury as follows : The State of Florida by an indictment found by a grand jury of your county charge the prisoners at the bar with lewdly and lasciviously associating and cohabiting to

gether, by cohabiting and having carnal knowledge of each other, and that they were not married to each other. The statute under which these defendants are indicted and prosecuted reads as follows : " If any man and woman, not being married to each other, lewdly and lasciviously associate and cohabit together; or if any man or woman, married or unmarried, is guilty of open and gross lewdness and lascivious behaviour." You will observe that this indictment is found under the first clause of the act, to-wit : "If any man or woman, not being married to each other, lewdly and lasciviously associate and cohabit together," shall on conviction be punished, &c. This offense, like offenses of a kindred character, and particularly offenses that, carried on or perpetrated, are perpetrated in secret, and the proof of its existence must of necessity depend in many cases largely on circumstances proven, going to show the guilt or innocence of the accused. It is not essential that the witnesses should be able to and should testify to having seen the defendants in the actual act of cohabitation or coition, in order to find a verdict of guilty. It is sufficient if the facts and circumstances proven are such as to satisfy your minds beyond a reasonable doubt that the defendants associated and cohabited together habitually as husband and wife, or as though the marital or conjugal relation existed between them.

If you believe from the evidence and are satified be-

yond a reasonable doubt that the defendants were not married to each other, and should be further thus satisfied that the defendants within two years last before the 17th of October, 1890. lived together and habitually slept in the same room with only a young child each with them, that they so lived and slept for twelve or fifteen months ; that there were several other rooms in their said house other than the room they slept in ; and should further be satisfied that a child or children were borne by the defendant, Maggie Johnson, and that she laid them on, or the youngest one, to the defendant, John Pinson ; and should be further satisfied that during and at the time of Maggie's confinement at the birth of said child or children, the defendant, John Pinson, had her attended to by a doctor and nursed during her said confinement as though she was his wife, then you may and should find the defendants guilty, unless those circumstances are explained by the evidence in some way consistent with the presumption of defendants' innocence. But proof of a single act of cohabitation of an occasional act of coition between the parties is not sufficient to constitute the offense. The object of our statute is to prohibit the public scandal and disgrace of such living together by persons of opposite sexes and unmarried to each other, and to prevent such evil and indecent examples with their tendency to corrupt public morals. You may and should consider all the facts and circumstances as proven, as,

for instance whether the evidence shows the consent of the woman, and the will and consent of the man, and whether or not there was an opportunity to gratify their natural passions for sexual intercourse. And to justify a verdict of guilty, the evidence must show that the defendants dwelt and cohabited together as if the conjugal relation existed between them, and that they habitually consorted together for weeks or months next before the finding of the indictment.

(2.) And as before remarked, if the evidence satisfied your mind beyond a reasonable doubt that at the house at which the defendants lived had a number of rooms, and that the defendants chose to sleep to themselves in a room with only a young child with each, for twelve or fifteen months, or more, next before the finding of indictment in this case; that a child or children was born to them; that the defendant, Pinson, had a doctor, or nurse, or both, to attend Maggie during her accouchment; that the defendant, Maggie, said said child or children was the offspring of Pinson; that on being so told, Pinson made no denial or stood silent, and then if there is no other explanation of this circumstance, or these circumstances, only that such last child may have possibly been begotten by a single act of cohabitation between the defendants, in the argument of counsel, then you may find the defendants guilty. You are the sole judges of the evidence and of its weight and credibility, and should found your

verdict upon evidence which you believe to be true. The statement of the accused made under oath in their own behalf are to be considered by you, together with all the other evidence, and are entitled to such weight as you may deem it entitled to, and no more. In some States the jury are required to fix the penalty when they find a verdict of guilty, but in this State the law fixes the penalty, and your responsibility ceases when you have found an honest verdict from the evidence, and you are not responsible for the penalty fixed by the law, and should not be affected by appeals made to your sympathy, or to the severity of the penalty; you have nothing to do with the penalty except to make you careful to find an honest verdict.

Counsel for defendants asked the court to give the following additional charge, to-wit : In order to justify a verdict of guilty the State must prove not only that the defendants resided together but that they had illicit intercourse, and that such intercourse was habitual, and not occasional. This request was refused, in the the language of the Judge, "not given because more correctly given."

The jury returned a verdict of guilty against defendants. They moved for a new trial, assigning the following reasons :

1. The verdict of the jury is contrary to the law.

2. The verdict of the jury is contrary to the evidence.

3. Because the court erred in charging "that this

offense, like offenses of a kindred character, are peculi-
arly offenses carried on or perpetrated and perpetrated
in secret.

4. Because the court erred in charging that if the
jury believe from the evidence that the defendants,
within two years last before the 17th of October, 1890,
lived together and habitually slept in the same room
with only a young child with them ; that they so lived
and slept for twelve or fifteen months ; that there were
several other rooms in their said house other than the
room they slept in ; and were further satisfied that
child or children were borne by the defendant, Maggie
Johnson, and that she laid them, or one of them, to
the defendant, John Pinson ; and should further be
satisfied that during and at the time of Maggie's con-
finement at the birth of said child or children the de
fendant, John Pinson, had her attended by a doctor,
and nursed her during said confinement as though she
was his wife, then you may and should find the defend-
ants guilty, unless those circumstances are explained
by the evidence in some way consistent with the pre-
sumption of defendants' innocence.

5. The court erred in charging the jury that "you
may and should consider all the facts and circumstan-
ces as proven, as, for instance, whether the evidence
showed the consent of the woman, and the will and
consent of the man, and whether or not there was an
opportunity to gratify their natural passions for sexual
intercourse.

6. The court erred in giving charge marked (2) as given by the court.

7. The court erred in refusing to give the charge as asked by the defense.

8. The court erred in telling the counsel for defendants in open court while he was consulting with them previous to placing defendants on the stand, that he must not suggest to the defendants what they must say.

This motion was overruled, and defendant, Pinson, sentenced to the penitentiary for three years.

He now brings this cause here by writ of error, and signs the following as errors:

1. The court erred in overruling motion for a new trial.

2. The court erred in charging that "this offense, like offenses of a kindred character, are peculiarly offenses carried on or perpetrated, and perpetrated in secret."

3. The court erred in charging that "if the jury believed from the evidence that the defendants, within two years last before the 17th of October, 1890, lived together, and habitually slept in the same room with only a young child with them; that they so lived and slept for twelve or fifteen months; that there were several other rooms in their said house, other than the room they slept in; and were further satisfied that a child or children were borne by the defendant Maggie Johnson, and that she laid them, or one of them, to

the defendant John Pinson ; and should further be satisfied that during and at the time of Maggie's confinement at the birth of said child or children, the defendant John Pinson had her attended by a doctor, and nursed during her said confinement as though she was his wife, then you may and should find the defendants guilty, unless those circumstances are explained by the evidence in some way consistent with the presumption of defendants' innocence."

4. The court erred in charging that "you may and should consider all the facts and circumstances as proven, as, for instance, whether the evidence showed the consent of the woman, and the will and consent of the man, and whether or not there was an opportunity to gratify their natural passions for sexual intercourse."

5. The court erred in charging that "and as before remarked, if the evidence satisfies your minds beyond a reasonable doubt that at the house at which the defendants lived had a number of rooms, and that the defendants chose to sleep to themselves in a room with only a young child with each, for twelve or fifteen months, or before, next before the finding of the indictment in this case ; that a child or children was born to them ; that the defendant Pinson had a doctor, or nurse, or both, to attend Maggie during her accouchment ; that the defendant Maggie said, said child or children was the offspring of Pinson ; that on being so told, Pinson made no denial, or stood silent ; and that if there is no other explanation of this cir-

cumstance, or these circumstances, only that such last child may have possibly been begotten by a single act of cohabitation between the defendants, in the argument of counsel, then you may find the defendants guilty."

6. The court erred in refusing to give the charge as asked by the defense, that in order to find the defendants guilty, the State must prove not only that they dwelt together, but that they had carnal knowledge of each other, and that such knowledge was not occasional, but habitual.

7. The court erred in telling the defendants' counsel in open court while he was consulting with them previous to placing them on the stand, that he must not suggest to defendants what they must say.

The other facts in the case are stated in the opinion of the court.

*Alexis M. Michelson* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J. :

The first assignment of error, that the court erred in overruling the motion for a new trial, involves all the questions presented for our review. We will first consider the exceptions to the charges of the court.

The second assignment of error relates to a portion of the first charge given to the jury. After reciting

the statute under which defendants were indicted, the Judge proceeded to charge the jury, as shown by the bill of exceptions, that "this offense, like offenses of a kindred character, and particularly offenses that, carried on or perpetrated, are perpetrated in secret," &c. This portion of the charge was excepted to in the motion tor a new trial. The objection to it urged here is that it is calculated to convey to the minds of the jurors the impression that the offense for which defendants were indicted was perpetrated secretly, whereas, in order to constitute the offense, there must be a living together openly as if the conjugal relation existed between them. This court has considered the nature of this offense, and also what must be proven to constitute it. Luster et al. vs. State, 23 Fla., 339 ; Brevaldo vs. State, 21 Fla., 789. The terms "not being married to each other," and "lewdly and lasciviously associate and cohabit together," clearly indicate that the statute was designed to apply to cases where a man and woman, not being married to each other, live together as husband and wife live together, without the sanction of the marital tie. There is necessarily included in this offense both lewd and lascivious intercourse and a living or dwelling together as if the relation of husband and wife existed. Jones vs. Commonwealth, 80 Va., 18; Commonwealth vs. Munson, 127 Mass., 459. The lewd and lascivious intercourse is almost always secret, and in the very nature of the case the evidence of it must, to a considerable extent, be circumstantial, but the association and

cohabitation must be so far open as to offend public decency, cause scandal or tend to corrupt public morals. The intention of the Judge evidently was to inform the jury that the lewd and lascivious association, like offenses kindred to it, is perpetrated in secret. This is manifested by what immediately follows as part of the same charge. After using the language excepted to, the Judge in the same connection charged, "and the proof of its existence must of necessity depend in many cases largely on circumstances proven going to show the guilt or innocence of the accused." This exception, however, is to a portion of the charge only. We cannot eliminate this portion and test its accuracy without any reference to the remainder of the charge on the same question. Smith vs. Bagwell, 19 Fla., 117 ; Andrews vs. State, 21 Fla., 598. In connection with the language excepted to, the Judge charges the jury that "it is sufficient if the facts and circumstances proven are such as to satisfy your minds beyond a reasonable doubt that the defendants associated and cohabited together habitually as husband and wife, or as though the married or conjugal relation existed between them." Taking the entire charge as to the nature and what was necessary to constitute the offense together, we think it reasonably certain that the jury could not have been misled by the portion of the charge to which exception was taken.

The third assignment of error is based upon another portion of the charge given by the court to the jury.

The first objection to the portion of the charge pointed out under this assignment of error is, that it is abstract and misleading, in that it relies on fictitious evidence. It is claimed by counsel for plaintiff in error that the court charged the jury as if the testimony showed that Pinson nursed Maggie as though she was his wife. We do not think this portion of the charge amenable to the criticism here made. The charge asserts that if the jury believe from the evidence, among other things, that during Maggie's confinement the defendant Pinson had her attended to by a doctor, and nursed as though she was his wife, they might and should find a verdict of guilty. This does not charge as though Pinson did the nursing. The next objection to this portion of the charge is more serious. It is contended that here the Judge invaded the province of the jury, and assumed to draw from certain facts the inference of defendant's guilt. By statute the trial judge can charge the jury only on the law of the case (McClellan's Digest, p. 338, sec. 34). He is forbidden to charge the jury on the facts of the case. Fergerson v. Porter, 3 Fla., 27. The application of this rule has been illustrated in several cases before this court. The judge cannot assume in his charge to the jury that certain facts were proven, when the truth or falsity of such facts is submitted to the jury for their determination. Collins vs. State, 13 Fla., 651 ; Louisville & Nashville Railroad Co. vs. Yniestra, 21 Fla., 700. A charge that a patent to the plaintiff's grantor, and a deed from such grantor to the plaintiff,

show a fee simple title in him, was held erroneous.
Ashmead vs. Wilson, 22 Fla., 255 ; Baker vs. Chatfield,
23 Fla., 540.   In Metzger vs. State, 18 Fla., 481, it was
decided that it was improper for the judge to charge
the jury that there was no conflicting evidence in the
case, but as in that case there was no conflict of evi-
dence, it was held to be a harmless error.   Not only
is the trial judge prohibited from charging the
jury directly as to the sufficiency or weight of
the evidence, or from assuming in his charge
that certain facts in issue are proven, but he can-
not draw an inference or presumption of fact from
the evidence.   He may charge as to the presump-
tions which the law by settled rule draws from
given facts, but an inference of a fact, or the conclu-
sion of the existence of a fact from some other fact or
facts is always drawn by the jury who are the triers of
questions of fact.   2 Thompson on Trials, sec. 2290.
In the Case of Case vs. Weber, 2 Ind., 108, suit was in-
stituted for obstructing a water course by a fish dam,
to the injury of plaintiff's mill.   The court was asked
to give this instruction : "that if the fish-dam, the con-
struction of which is complained of, is built three-
quarters of a mile below the plaintiff's mill, and the
jury believe from the evidence that said dam is only
one foot high, and that the fall of the water from the
surface thereof below the plaintiff's mill-wheel to the
surface thereof on the top of the fish-dam is nearly two
feet, the jury must find for the defendants."   In dis-
cussing this charge requested, the court say :   "It is

the duty of the court to instruct the jury as to the law, to inform them of the legal sequence resulting from given facts.    In this case the question of fact was whether the fish-dam threw the water back upon the plaintiff's mill-wheel, and the question of law was, whether, if it did, it was thrown back under such circumstances as rendered the defendants liable.    The court was not bound to tell the jury that according to the principles of natural philosophy or of physics, one fact necessarily resulted as a consequence of another fact, and that is what it was asked to do in the instruction under consideration.    *    *    *    The instruction under consideration might have constituted a very good argument by counsel to convince the jury that the plaintiffs had not been injured, but we think they are not such as the court was bound to give.''    Knight's Administrator vs. Vardeman, 25 Ala., 262 ; Easterling vs. State, 30 Ala., 46 ; White vs. Haas, 32 Ala., 430 ; Schneer vs. Lemp, 17 Mo., 142 ; Glover's Administrators vs. Duhle, 19 Mo., 360 ; Union Mutual Life Ins. Co. vs. Buchanan, 100 Ind., 63 ; State vs. Lynott, 5 R. I., 295.    In the portion of the charge excepted to under the assignment of error now being considered the Judge, in effect, directed the jury that if they believed from the evidence a certain state of facts mentioned in the charge, they may and should find the defendants guilty, unless that state of facts is explained by the evidence in some way consistent with the presumption of defendant's innocence.    This is virtually saying to the jury that the state of facts mentioned in the charge is inconsistent

with the innocence of defendants, and they should be convicted, unless the testimony removed the presumption of guilt arising from said state of facts. The state of facts mentioned by the Judge in his charge do not in law constitute the offense of which defendants were indicted. It was proper for the jury to consider this state of facts, and they might have, if deemed sufficient by them, deduced therefrom that the association or cohabitation was lewd and lascivious, but the direction to them in the charge, coming as it did from the court, was calculated to unduly influence them in arriving at such result. In order to convict the defendants, the evidence must satisfy the jury beyond a reasonable doubt that said defendants lived or dwelt together as husband wife in lewd and lascivious association. The jury was the sole judges of what facts and circumstances constituted such a living or dwelling together as husband and wife, and in a case like this where the lewd and lascivious intercourse depends upon circumstances, it was not permissible for the Judge to express his opinion to them as to the effect of the facts and circumstances mentioned in his charge. In this respect we think he trenched upon the exclusive province of the jury, in attempting to substitute his own inference for what might have been theirs.

Counsel for plaintiff in error in his brief filed here says that assignments of error not referred to therein are abandoned. No reference is made in his brief to the fourth assignment of error, and the same is, therefore, expressly abandoned here. We do not think,

however, that the Judge erred in charging the jury as expressed in the portion of the charge excepted to under this assignment. It was simply a direction to the jury that they should consider all the facts and circumstances proven, and the particulars mentioned by the Judge were illustrations of the application of the rule given them. He does not say that they shall consider only the circumstances mentioned.

The fifth assignment or error calls in question a portion of the second charge given by the court to the jury. The portion of the charge here assigned as error was not excepted to at the time it was given, or in a motion for a new trial. The record shows that in the motion for a new trial the only exception taken to the second charge was to it as an entirety. The plaintiff in error having failed to except in the court below to the portion of the charge now assigned as error, cannot avail himself of such exception here; he must rely upon his exception to the entire charge. It is well settled that a general exception to a charge, or a general exception to several charges, will not be good if the charge or any one of the charges contain a correct proposition of law applicable to the case. Baker vs. Chatfield, 23 Fla., 540; Metzger vs. State, 18 Fla., 481. By a reference to the charge numbered two, it will be seen that it contains several correct statements of law applicable to the case before the jury. We are, therefore, unable to consider the portion of the charge here assigned as error, and express no opinion as to it.

The sixth assignment of error is, that the Judge re-fused to give the charge asked by plaintiff in error. The charge asked contains a correct statement of the law applicable to the case. The refusal of the Judge was not on the ground that the charge was erroneous, but because the same had been more correctly given. If the Judge had already given in substance to the jury the instruction asked, it was not error to refuse it. Metzger vs. State, 18 Fla., 481. We think the Judge charged fully in this case, and that the instruction asked by plaintiff in error is covered by portions of the charge given. The Judge could have given the charge asked without committing error, but his refusal after what he had charged on the same subject does not amount to error.

The seventh assignment of error cannot be sustained. There is nothing in the bill of exceptions showing that the Judge used the language assigned as error here. In his motion for a new trial, plaintiff in error assigned this as a ground, but the recital in the motion does not afford evidence that the Judge used such language. For a full discussion on this point see the cases of Par-rish vs. Pensacola & Atlantic R. R. Co., and Richard-son vs. State, decided at this term.

For the error above pointed out, the judgment is re-versed and a new trial awarded.