HENRY THOMAS AND MARY LONG, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—LEWD AND LASCIVIOUS COHABITATION, EVIDENCE TO SUSTAIN.

1. To sustain a conviction of the crime of lewd and lascivious association and cohabitation under the provisions of section 2596, Revised Statutes, the evidence must show a dwelling or living together, or cohabitation, that is lewd or lascivious. It must show that the parties openly dwell together as though the relation of husband and wife existed between them. Proofs of occasional secret acts of illicit intercourse between them will not, of themselves, sustain the charge.

2. In the offense of lewd and lascivious association and cohabitation there is included both lewd and lascivious intercourse, and a living or dwelling together as if the conjugal relation existed between the parties.

Writ of Error to the Circuit Court for Volusia county.

The facts in the case are stated in the opinion of the court.

*F. C. Austin*, for Plaintiffs in Error.

The *Attorney-General*, for Defendant in Error.

TAYLOR, J.:

The plaintiffs in error, upon information filed, were tried and convicted in the Criminal Court of Record of Volusia county at its April term, 1897, of the crime of lewd and lascivious cohabitation, and sentenced to eighteen months' imprisonment in the State penitentiary, and seek reversal on writ of error.

Their motion for new trial, the denial of which is assigned as error, was upon the ground, among others, "that the evidence introduced by the State was totally insufficient to convict them of the crime charged." The information upon which they were tried was predicated upon the first paragraph of the following section (2596) of the Revised Statutes: "If any man and woman, not being married to each other, lewdly and lasciviously associate and cohabit together, or if any man or woman, married or unmarried, is guilty of open and gross lewdness and lascivious behavior, they shall be punished by imprisonment in the State prison not exceeding two years, or in the county jail not exceeding one year, or by fine not exceeding three hundred dollars."

The evidence upon which such conviction was had was substantially as follows, as appears from the transcript of the record: J. R. Turner, for the State,

testified that he knew both of the defendants; that he was sheriff of Volusia county; that about the 21st of February, 1897, between 12 and 1 o'clock at night he went to the house where Mary Long resided; that when he got there he had reason to believe Thomas was in there with the woman Mary, and he heard them get out of bed, and called to them to come out. Henry said "all right," and apparently was trying to get a light; that he heard a racket on the floor and looked beneath and saw some one getting through a trap door; and he called to them to come out and they jumped back in the room; that he then ran against the door and broke it in and struck some matches, and saw Henry and Mary in the room together. It was on Sunday night. Neither of them were in bed when he got in the room. Only one bed was in the room. Henry was partly dressed, and she was in her night clothes; that as he pushed the door down he struck a match and Henry said "don't shoot me," and fanned out the match with his coat and he (the witness) fired. Henry Thomas then struck him in the breast and he sprang back to recover, and as he did so Henry went over him and jumped and fell on the ground and lay there. Mr. W. P. Edwards, who was with him at the time, searched the house and found a revolver close to the trap door. We got Mary then. It all happened in Volusia county, Florida. After Henry was arrested he finished dressing. W. P. Edwards testified that he was a deputy sheriff of Volusia county, and assisted in arresting Henry Thomas and Mary Long. He reiterated, substantially, the testimony of the sheriff. Aaron Adams, for the State, testified that he knew both of the defendants; that he had never seen them associated together—no further than being in the yard; that

he had seen them together in the yard; that he had seen Henry there quite a lot of times; that he had never seen him in the house there, but saw him there in the yard about 10 o'clock at night on the Saturday before he was arrested; that he was in the yard talking and he called him; that he had seen him there before at night quite a lot of times; that he (witness) was only passing by when he saw him there; that he had never seen them in that house and in bed together. Allen Long, for the State, testified that he knew both of the defendants; that he was a brother to the defendant Mary Long, and lived on Lake Helen; that he had seen Henry and Mary together, but not so many times. After first denying it, this witness then stated that late on the Saturday before Henry was arrested he brought groceries there and gave them to Mary, and he and she went in the room and cooked and ate them, and did not come out of there; that he had seen Henry there a number of times, and that he had brought groceries and went into the room and they shut the door and stayed there shut up together; that he lived with his father, and that he, his father, and older sister and Mary, the defendant, lived there together in that house. Lucy Suber, for the State, testified that she lived in Lake Helen village, about a quarter of a mile from the house of old man Long; that she went by there, but never at any time saw Henry Thomas there, nor in the yard. This comprised the whole of the State's evidence.

Nathan Irving, for the defendants, testified that he lived in Lake Ellen about four hundred yards from Mary Long's house, and was about as near a neighbor to her as any one; that he and Thomas had worked together pretty much, and in going to work and leav-

ing their work they passed by there, and he had never
seen him stop by; that he had never seen them to-
gether, sleeping together or cohabiting together, and
if they had done so he would have been likely to have
seen it. This constitutes the substance of the entire
evidence in the cause.

In Luster *et al.* vs. State, 23 Fla. 339, 2 South. Rep.
690, this court, construing this statute, says: "The
evidence must show a dwelling or living together, or
cohabitation, that is lewd or lascivious; it must show
that the parties dwell together as if the conjugal rela-
tion existed between them. The object of the statute
was to prohibit the public scandal and disgrace of such
living together by persons of opposite sexes, and un-
married to each other; to prevent such evil and inde-
cent examples, with their tendency to corrupt public
morals. Proofs of occasional acts of incontinency
will not of themselves sustain the charge." In that
case the proof was much stronger than in the present
case, yet the judgment of conviction was reversed be-
cause of its failure to show "a dwelling together of the
parties as if the conjugal relation existed between
them." This construction of the statute was reiter-
ated in Pinson vs. State, 28 Fla. 735, 9 South. Rep.
706, the court saying in its first head-note: "In the
offense of lewd and lascivious association and cohabi-
tation there is included both lewd and lascivious in-
tercouse, and a living or dwelling together as if the
conjugal relation existed between the parties." To
the same effect are the cases of Commonwealth vs.
Calef, 10 Mass. 153; State vs. Marvin, 12 Iowa, 499;
Searls vs. People, 13 Ill. 597; Carotti vs. State, 42
Miss. 334, S. C. 97 Am. Dec. 465. According to these
authorities, and we do not hesitate to endorse their

correctness, the testimony presented to us in the record is wholly insufficient to sustain a conviction. It tends to show one act of *secret* lewdness between the defendants, but there is an entire absence of any proof even tending to show that *open dwelling* or *cohabiting* together, as though the marriage relation existed between the parties, that is essential to be proved, in conjunction with illicit sexual intercourse between them, in order to make out the offense under this statute.

The judgment of the court below is reversed and a new trial awarded.