## THE PEOPLE *v.* VILAR.

### APPEAL from the District Court of Humacao.

No. 375.—Decided November 3, 1911.

CRIMINAL LAW—PUBLICATION OF INDECENT WRITINGS—ESSENTIAL ELEMENTS OF OFFENSE.—In an information based on a violation of section 283 of the Penal Code it is necessary to prove only that the defendant wilfully and lewdly published, sold, and distributed the obscene articles referred to in the information. The evidence in the case at bar having been examined, the Supreme Court decided that such requisites were proved beyond any reasonable doubt.

ID.—CIRCUMSTANTIAL EVIDENCE—REASONABLE DOUBT.—A reasonable doubt is not a vague or capricious idea or conception, but that doubt which makes a man of ordinary common sense hesitate before deciding any question of importance which may present itself to him and which affects him directly.

ID.—INTERPRETATION OF LAW—ACT COMMITTED VOLUNTARILY AND LEWDLY.—It is clear that when our legislature used the word "lewdly" in section 283 of the Penal Code it did so in the same sense and with similar intention that the Congress of the United States had in using it in the statute which prohibits the forwarding by mail of any writing which tends to disseminate immorality in any form among the people, and said word should be interpreted in its current and ordinary meaning.

ID.—VOLUNTARY COMMITTAL OF ACT—PRESUMPTION.—In interpreting the word "wilfully" it has been decided repeatedly that when an unlawful act has been committed and there is no evidence to prove that it was the result of accident or carelessness, the presumption is that the act was committed wilfully.

The facts are stated in the opinion.

Mr. *Rafael López Landrón* for appellant.

Mr. *Jesús M. Rossy,* prosecuting attorney, for The People.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this case Juan Vilar was accused of violating section 283 of the Penal Code. That section reads as follows:

"Every person who wilfully and lewdly, either:

"3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or books; or designs, copies, draws, engraves, paints, or otherwise prepares any obscene or indecent picture or print; or molds, cuts, casts, or otherwise makes any obscene or indecent figure; * * * is guilty of a misdemeanor."

The accusation alleges that the defendant wilfully and lewdly ordered the printing, publication, and distribution of a paper called "Voz Humana," a copy of which was attached thereto, and of which paper the said Juan Vilar was the manager or editor, publishing in said paper an editorial grossly obscene and indecent with the heading "Hideous Crime. Rape and debauchery committed on a child seven years old," setting out an extract from the editorial; and it is further alleged in the accusation that in the same paper another editorial appeared with the heading, "The Triumph of the Flesh," quoting from the same at some length. The extracts from the publication are too foul for transcription here.

On the trial the accused was found guilty of the charge and on May 29 last, was sentenced to two years' imprisonment in jail and payment of the costs of prosecution. From this judgment the defendant appealed to this court and was released under a bond of $500. A statement of the case appears in the record, and on the hearing the defendant was

represented by counsel, the *fiscal* appearing for The People, and the case was duly submitted on briefs.

No exception is taken to the statement in the accusation that the defendant *ordered* the acts to be done, probably on the theory that *Qui facit per alium facit per se.* Counsel for the defendant rests his case on three propositions:

First. That there exists no conclusive, strong, or sufficient proof of the participation of the accused in ordering the printing, publication, and distribution of the articles denounced in the periodical.

Second. That it is not shown that the essential requisites of section 283 of the Penal Code have been proven.

Third. That on an examination of the articles denominated as punishable in the accusation, either in their purely literal sense or in their internal scope, they do not constitute immoral matter such as is forbidden in the Penal Code.

A logical consideration of the case presented requires a reversal in the order of this proposition, so we will treat them inversely, beginning with the third and last.

First. A mere perusal of the articles as set forth in the record shows that they are obscene and indecent, and this is all that the law requires. It is unnecessary to enter into any lengthy disquisitions on what constitutes obscenity or indecency; common sense and proper training at once direct the mind in its judgment on these matters. No candid person, with normal instincts, can read these articles and compare them with section 283 of the Penal Code and hesitate to say that the law was intended to cover just such publications.

Second. What are the essential requisites of section 283 of the Penal Code requiring proof? Nothing more than that the accused wilfully and lewdly published, sold or distributed the obscene articles mentioned in the complaint. Several witnesses testify that Vilar was the editor of "Voz Humana" in which these articles appeared; that he delivered the manuscript to the printer in order to have the same set up; that he paid for the printing of the edition of December 12, in

which these editorials were included; that he deposited the paper in the post office for distribution; that he sent 25 copies to Arecibo for sale and received pay for them.

It is true that the proof of some of these facts must be gathered from the statements of several different witnesses, but the evidence taken altogether leaves no doubt in the mind of a reasonable person that they exist and sufficiently appear from the proof. It is not necessary to produce eye-witnesses to every fact which goes to make up the offense charged in an accusation. It is enough if they appear from all the evidence, direct and circumstantial, beyond a reasonable doubt.

A reasonable doubt is not an idle or whimsical fancy, but a doubt which would cause an ordinary man of common sense to hesitate before taking action in an important matter arising in his own experience and affecting him personally.

It has been well defined in the following words:

"A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence; and if, after an impartial comparison and consideration of all the evidence, the jury can candidly say that they are not satisfied of the defendant's guilt, they have a reasonable doubt. But if, after such impartial comparison and consideration of all the evidence, they can truthfully say that they have an abiding conviction of the defendant's guilt, such as they would be willing to act upon in more weighty and important matters relating to their own affairs, they have no reasonable doubt." (*United States* v. *Lewis,* 111 Fed. Rep., 636. See also *Tomkins* v. *Butlerfield,* 25 Fed. Rep., 558; *United States* v. *Graves,* 53 Fed. Rep., 636; *State* v. *Millain,* 3 Nev., 409; *People* v. *Stott,* 4 N. Y. Cr. Rep., 306; *State* v. *James,* 37 Conn., 355; *Brown* v. *State,* 42 Atl. Rep., 811; *State* v. *Zdanowicz,* 55 Atl. Rep., 743; *United States* v *Dexter,* 154 Fed. Rep., 890; *Greene* v. *United States,* 154 Fed. Rep., 401; *United States* v. *Richards,* 149 Fed. Rep., 443; *Browne* v. *United States,* 145 Fed., Rep., 1.)

Applying this test to the facts of this case there is no room to question the proposition that the essential elements of the offense charged in the statute have been proven beyond a reasonable doubt.

Third. There can be no hesitation in finding from all the evidence adduced that the accused and no other is the author of the publication, and sold and distributed the same. . The purport of the defense made for the accused is that he did not do the acts *wilfully* and *lewdly,* in the terms of the Penal Code. . Something more than philosophical dissertations in regard to the scope of this penal statute is necessary to exonerate a defendant charged with its violation.    "Lewdly" means in a dissolute, sensual, unchaste, impure, or lascivious manner.    The word "lewd" has been decided to mean "having a tendency to excite lustful thoughts," in the statute defining what kind of matter is nonmailable.    (Rev. St., sec. 3893, as amended by the Act of July 12, 1876.)    Congress in using the terms "obscene," "indecent," "lewd," and "lascivious," had in mind merely the common meaning of these terms, and meant by the use of these common and plain words that nothing should circulate in the mails which would disseminate immorality in any form to the people.    (*United States* v. *Britton,* 17 Fed. Rep., 731.)    Our legislature plainly used the words in the same sense and with a similar intention.    Of course the adverb has a signification corresponding to that of the adjective.    That a man and a woman did lewdly and lasciviously associate together is declared by an indictment for adultery which alleges that they did unlawfully associate, bed, and cohabit together, and did thereby commit adultery. (See *State* v. *Stubbs,* 13 S. E., 90, 108 N. C., 774; *Luster* v. *State,* 2 South Rep., 690, 691, 23 Fla., 339; *Pinson* v. *State,* 28 Fla., 735, 9 South Rep., 706, 707; *Thomas* v. *State,* 39 Fla., 437, 22 South Rep., 725, 726; *Penton* v. *State,* 28 South Rep., 774, 775, 42 Fla., 560.)

It is difficult to conceive in what other manner than lewdly these articles could have been written, published or distributed.    Their publication certainly could not further any moral, chaste, or pure purpose.    The public to whom they were addressed by the accused have no power to correct any improper action which is described or narrated therein.    The

cause of truth and justice is not advanced by any such means or discussions. Proper impulses do not inspire publications like those herein denounced. Of course we cannot penetrate the recesses of the human heart and say what were the actual motives existing there from which narrations such as these resulted. We can only judge a tree by its fruits. (Matthew vii, 16.) As to the word "wilfully" it has often been held that when an unlawful act has been done in the absence of evidence showing accident or inadvertence it must be presumed to have been done wilfully. Black, in his Law Dictionary, page 1242, defines the adjective *wilful* as "proceeding from a conscious motion of the will; intending the result which actually comes to pass; designed; intentional; malicious." This definition has been approved by the Supreme Court of California in *Parsons* v. *Smile*, 97 Cal., 655. Wilfully has a similar signification when qualifying a verb. There is nothing to show that the act charged in the accusation preferred against Vilar was done in any other manner than wilfully and he must be presumed to have acted wilfully in the action denounced in this prosecution.

All the elements of the crime and the guilty participation of defendant therein, as an actor, as well as the violation of the letter and spirit of the statute sufficiently appear from the evidence beyond a reasonable doubt. So the defenses offered in behalf of the accused cannot avail him to escape punishment.

It may seem that two years in prison is a severe penalty to pay for the misdemeanor of which the defendant was convicted. No punishment is prescribed for this offense by section 283 of the Penal Code. It merely defines the violation of the statute as a misdemeanor. But the penalty is fixed by section 16 of the same code which reads as follows:

"Except in cases where a different punishment is prescribed by this code every offense declared to be a misdemeanor is punishable by imprisonment in jail not exceeding two years, or by a fine not exceeding two hundred and fifty dollars, or by both."

The trial judge imposed the maximum of the imprisonment allowed by law, but omitted the fine.   The costs necessarily follow the conviction.   (Laws of 1911, p. 67, Act No. 11.)

Although as a general rule this Supreme Court does not undertake to modify the punishment imposed by the trial court, nevertheless we believe that in the present case one year of imprisonment in the district jail is enough for the offense committed by the defendant.   Finding no error in the judgment rendered, with the modification mentioned, it should be affirmed.

*Decided accordingly.*

Justices Wolf, del Toro, and Aldrey concurred.

Mr. Chief Justice Hernández did not take part in the decision of this case.