111 So.2d 51 (1959)
Edward BUCHANAN, Petitioner,
v.
STATE of Florida and Nathan Mayo, Custodian Florida State Prison, Respondents.
No. A-30.
District Court of Appeal of Florida. First District.
April 21, 1959.
*52 Edward Buchanan in pro. per.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for respondents.
CARROLL, DONALD K., Judge.
This is an appeal from an order of the Circuit Court for Union County, Florida, denying the appellant's petition for writ of habeas corpus and making other rulings that are the subject of cross assignments of error filed by the appellees.
In his petition the appellant set forth that he was tried in the Circuit Court for Marion County on three counts in an information, was convicted on the second and third counts, and was sentenced to twenty years on each count, the sentence on one of the counts "to run consecutively with any sentence now being served by the defendant".
The first count of the information charged that the appellant on January 8, 1956, in the County of Marion and State of Florida "with force and arms at and in the County and State aforesaid, did unlawfully make an assault upon Lillie Buchanan, a female person, of the age of 13 years and did then and there attempt to have sexual intercourse with the said Lillie Buchanan". The second count charged that the petitioner on the same date and in the same county and state "did unlawfully and without intent to rape, did knowingly commit a lewd and lascivious act in the presence of Lillie Buchanan, a female child, of the age of 13 years by forcing her to take off her clothes and he, the said Edward Buchanan, then and there take out his penis and attempting to have sexual relations with said child". The third count charged that the appellant on the same date and in the same county and state "unlawfully and without any intent to rape one Lillie Buchanan, a female child of the age of 13 years, did unlawfully handle and fondle the said Lillie Buchanan in a lewd and lascivious manner by playing with her vagina with his hands and fingers, contrary to the form of the Statute in such cases made and provided and against the Peace and Dignity of the State of Florida."
At the trial the jury acquitted the appellant of Count 1 and found him guilty of Counts 2 and 3. Based upon this verdict the Circuit Court for Marion County sentenced the appellant as follows:
"* * * that you Edward Buchanan for the crime for which you have been and now stand convicted in the second count of this information be imprisoned at hard labor in the State Prison of Florida for the full term and period of twenty (20) years.
"It is the further Order, Judgment and Sentence of this Court that you Edward Buchanan for the crime for which you have been and now stand *53 convicted in the third count of his information be imprisoned at hard labor in the State Prison of Florida for the full term and period of twenty (20) years. Said sentence to run consecutively with any sentence now being served by the defendant herein."
At the time this sentence was entered the appellant was not serving any sentence.
In his petition for writ of habeas corpus the appellant contended that the sentence imposed in the judgment of the Circuit Court for Marion County was invalid under the decision of the Florida Supreme Court in Copeland v. State, Fla., 76 So.2d 137; that Sections 801.02 and 801.03, Florida Statutes, F.S.A., under which the sentence was imposed, was unconstitutional; that the act charged in the third count was a mere continuation of the act charged in the first count, of which the appellant was acquitted; that both Counts 2 and 3 failed to charge a definite and specific felony; that the language of the third conformed more or less to the language in Section 800.04, Florida Statutes, F.S.A., the punishment for violation of which was ten years as a maximum. In his petition the appellant also complained concerning certain correspondence he received from the Attorney General of Florida.
In order to understand the issues involved in this appeal it is necessary to examine and study the several statutes involved.
Section 800.04, Florida Statutes, F.S.A., provides:
"Any person who shall handle, fondle or make an assault upon any male or female child under the age of fourteen years in a lewd, lascivious or indecent manner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without intent to commit rape where such child is female, shall be deemed guilty of a felony and punished by imprisonment in the state prison or county jail for not more than ten years."
Sections 801.02 and 801.03, Florida Statutes, F.S.A., which are parts of the "Child Molester Act", provide:
"801.02 Definitions.  An offense under the provisions of this chapter shall include attempted rape, sodomy, attempted sodomy, crimes against nature, attempted crimes against nature, lewd and lascivious behavior, assault (when a sexual act is completed or attempted) * * * when said acts are committed against, to, or with a person fourteen years of age or under.
"801.03 Powers and duties of judge after convictions.  (1) When any person has been convicted of an offense within the meaning of this chapter, it shall be within the power and discretion of the trial judge to:
"(a) Sentence said person to a term of years not to exceed twenty-five years in the state prison at Raiford.

"(b) Commit such person for treatment and rehabilitation to the Florida state hospital, or to the hospital of the state institution to which he would be sent as provided by law because of his age or color. In any such case the court may, in its discretion, stay further criminal proceedings or defer the imposition of sentence pending the discharge of such person from further treatment in accordance with the procedure as outlined in this chapter.
"(2) When a person has been convicted of an offense within the meaning of this chapter and the trial judge shall determine to follow the procedure prescribed in subsection (1) (b) of this section, the trial judge shall order a psychiatric examination and require a written report on the person so convicted prior to committing said person or passing sentence on said person. In the event said person is convicted and committed under subsection (1) (b) of this section, the clerk of the court where such commitment is made shall transmit four certified copies of the examining *54 psychiatrist's report to the superintendent of the Florida state prison.
"(3) When a person has been committed to an institution for treatment under the provisions of this Chapter and the superintendent of such institution certifies to the committing court that such person is not insane and further that institution has exhausted its curative abilities upon such person, such person shall be returned to the committing court for further disposition of his case by said court. The superintendent of such institution shall also return with said committed person all records and data pertaining to said person. The superintendent of such institution shall make to the committing court in such cases a report on the treatment received by such person while in the institution. Said report shall contain a diagnosis of the person's condition, a prognosis and the report of the superintendent of such institution as to whether or not such person is dangerous to society."
The appellant contends that the Child Molester Act, F.S.A. § 801.01 et seq., is unconstitutional because in violation of Article III, Section 16, of the Florida Constitution, F.S.A., which provides:
"Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised (by reference) to its title only; but in such case the act as revised or section, or subsection of a section, or paragraph of a subsection of a section, as amended, shall be reenacted and published at length."
First, in considering the question as to the act's compliance with the title requirements in the quoted constitutional provision, it is necessary to examine the legislative history of the Child Molester Act. This act was first enacted by the 1951 Florida Legislature, as Chapter 26843, Laws of Florida, Acts of 1951. The title of this act is as follows:
"An Act to Provide for the Sentencing, Commitment, Treatment, Parole, Release and Discharge of Persons Convicted of Certain Sex Offenses Against Persons Under the Age of Twelve Years."
Section 2 of Chapter 26843 provided:
"Section 2. Definitions: the following terms are defined hereafter for the purpose of this Act.
"(1) Offenses: An offense under the provisions of this Act shall include rape, attempted rape, sodomy, attempted sodomy, crimes against nature, attempted crimes against nature, lewd and lascivious behavior, assault (when a sexual act is completed or attempted) and assault and battery, (when a sexual act is completed or attempted), when said acts are committed against, to or with a person twelve years of age or under."
Section 3 provided:
"Section 3. When any person has been convicted of an offense within the meaning of this Act, it shall be within the power and discretion of the trial judge to:
"(1) Sentence said person to the sentence otherwise provided by law, or;
"(2) Commit such person for treatment or rehabilitation to the Florida State Hospital, or to the hospital of the State Institution to which he would be sent as provided by law because of his age or color. In any such case the court may, in its discretion, stay further criminal proceedings or defer the imposition of sentence pending the discharge of such person from further treatment in accordance with the procedure as outlined in this Act."
*55 The Florida Legislature amended the Child Molester Act in 1953 by the enactment of Chapter 28158, Laws of Florida, Acts of 1953, the title of which chapter is:
"An Act to Amend Section 801.02; Paragraph (a) of Subsection (1) of Section 801.03; Subsection (2) of 801.03; Subsection (3) of Section 801.08; Subsection (2) of Section 801.12; and Further Amending Section 801.12 by Adding a New Subsection (3) Thereto; Amending Section 801.13 and Repealing Section 801.14, Florida Statutes 1951, Relating to the Child Molester Act, Providing for Sentencing, Commitment, Treatment, Parole, Release, and Discharge of Persons Convicted of Certain Sex Offenses Against, to, or With Persons Fourteen Years of Age or Under."
Section 1 of this chapter amended Section 801.02, Florida Statutes 1951 (Section 2 of Chapter 26843), to change the age of the child from twelve to fourteen years. Section 2 of Chapter 28158 provided:
"Section 2. Paragraph (a) of Subsection (1) of Section 801.03, Florida Statutes 1951, is amended to read:
"801.03 Powers and duties of judge after convictions.
* * * * * *
"(2) * * * Sentence said person to a term of years not to exceed twenty-five years in the state prison at Raiford, Florida."
Another amendment to the Child Molester Act occurred in 1955, when the Legislature enacted Chapter 29923, Laws of Florida, Acts of 1955, which amended Section 801.02, Florida Statutes (Section 2 of Chapter 26843), by removing the word "rape" from the definition of the offenses under the law; no doubt as a result of the decision of the Florida Supreme Court in Copeland v. State, Fla., 76 So.2d 137, which had held that the Child Molester Act had not constitutionally reduced the sentence for rape from death or life imprisonment to twenty-five years imprisonment. The 1957 Legislature enacted Chapter 57-1990, which amended the Child Molester Act with respect to the psychiatric examination of sexual deviates and added the crimes of incest and attempted incest to the definition of offenses.
The serious question then comes before us in this appeal whether the Florida Legislature, when it enacted Chapter 26843 in 1951, and Chapter 28158 in 1953, was sufficiently put on notice that the legislative bills before it, with the titles as quoted above, would, if enacted in the law, provide for the punishment for the offense of lewd and lascivious behavior committed against, to or with a child fourteen years of age or under.
In applying this constitutional provision to the titles of the 1951 and 1953 acts in question, we have the guidance of the long-established principles in Florida that doubt as to whether matter found in a statute is included in the title is resolved in favor of the legislative determination (State ex rel. Crump v. Sullivan, 99 Fla. 1070, 128 So. 478), that the violation of the requirement that the subject of the act be expressed in the title must be substantial and plain to warrant condemnation of the act (Ex parte Sarros, 116 Fla. 86, 156 So. 396), and that the Legislature may make the title to an act as comprehensive or as restrictive as it chooses (Lee v. Cloverleaf, Inc., 130 Fla. 435, 177 So. 722).
Applying these principles to the 1951 and 1953 acts in question, we believe that the Legislature was duly put on notice that these acts would provide for the punishment for the offense of lewd and lascivious behavior to or with children. The simple words "child molester", comprehensive as they are, should indicate to a legislator that the offense of lewd and lascivious behavior to or with children was likely to be affected by the provisions of the acts. In fact, lewd and lascivious behavior, as broad a term as that is, to or with children *56 would probably be the first offense that would come to a legislator's mind as being comprehended within the meaning of child molestation, particularly when the titles themselves specifically declare that these acts "Provide for the Sentencing, Commitment, Treatment, Parole, Release and Discharge of Persons Convicted of Certain Sex Offenses" against children.
Even if the title of the Child Molester Act were insufficient under the Constitution, the act became valid by incorporation in the general revision of the Laws of Florida (namely, Chapter 801 of Florida Statutes 1955, and Florida Statutes 1957, F.S.A.), whether the insufficiency has been adjudicated or not, under the doctrine recognized and followed by our Supreme Court in State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804, and other cases.
We now turn our attention to the question whether the Child Molester Act violated Article III, Section 16, of the Florida Constitution by failing to reenact and publish at length the sections of the statutes amended by that act, such as Section 800.04, Florida Statutes, F.S.A.
In our opinion the Child Molester Act does not violate these constitutional provisions requiring that no law shall be amended or revised unless "the act as revised or section, or subsection of a section, or paragraph of a subsection of a section, as amended, shall be reenacted and published at length." The Florida Supreme Court has frequently pointed out that the quoted constitutional provision applies only to laws that assume in terms to revise, alter, or amend a particular act or section of an act. For instance, in the case of In re DeWoody, 94 Fla. 96, 113 So. 677, 679, the Supreme Court said:
"`It was never intended by the Constitution that every law which would affect some previous statute of varied provisions on the same subject should set out the statute, or statutes, so affected at full length.
"`The constitutional provision forbidding the amendment or revision of a law by reference to its title only and requiring the Acts as revised, or section as amended, to be re-enacted and published at length does not apply to amendments or repeals of statutes that are affected by implication, but applies only to laws that assume in terms to revise, alter or amend some particular prior Act or section of an Act,' Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, L.R.A. 1918E, 639. See also Lake v. State, 18 Fla. 501; City of St. Petersburg v. English, 54 Fla. 585, 45 So. 483."
To the same effect see Saunders v. Provisional Municipality of Pensacola, 24 Fla. 226, 4 So. 801; Smith v. State, 29 Fla. 408, 10 So. 894; Miami Transit Co. v. Amos, 115 Fla. 842, 156 So. 279; State ex rel. Jacksonville Gas Co. v. Lewis, 125 Fla. 816, 170 So. 306; and State ex rel. Hurner v. Culbreath, 140 Fla. 634, 192 So. 814; L.R.A. 1918E, 639.
In the instant case the Child Molester Act did not in terms purport to amend any prior statutory provision, and consequently it was not required to reenact and publish at length Section 800.04, Florida Statutes, F.S.A., or any other statute.
Appellant, however, relies heavily upon the decision of the Florida Supreme Court in Copeland v. State, Fla., 76 So.2d 137, 142, contending that the Supreme Court in that case held the Child Molester Act to be unconstitutional. Actually, however, the Supreme Court in that case held that the Child Molester Act was void under Section 16, Article III, of the Florida Constitution and of no effect as to rape and the penalty therefor. The Supreme Court in that case expressly restricted its holding to the crime of rape, saying: "It is unnecessary to discuss any crime except that of rape * * *." In its opinion the court pointed out that the Child Molester Act attempted to amend the penalty provisions of eleven separate, distinct statutes, in addition *57 to attempting to amend Section 794.01, Florida Statutes, F.S.A., which provides for punishment by death for rape, unless a majority of the jury in their verdict recommend mercy, in which event punishment should be by imprisonment in the state prison for life or for any term of years within the discretion of the judge. We can well understand how a legislator who reads the titles of the 1951 and 1953 acts would not be at all likely to think that these acts would attempt to "reduce the long standing punishment for rape of death or life imprisonment down to twenty-five years imprisonment", but we do think he logically would consider those acts would attempted to provide the punishment for lewd and lascivious behavior. We consider, therefore, that the Supreme Court in the Copeland case restricted its holding expressly to the crime of rape and did not hold that the Child Molester Act was unconstitutional in its application to lewd and lascivious behavior or any crimes other than rape. Anything said in the opinion in the Copeland case to the contrary of our holding was, we think, pure obiter dictum and should not be followed in the instant case.
In this consideration we must acknowledge that the words "lewd and lascivious behavior" are not defined in the Child Molester Act. It is also true that those words are not defined anywhere in the Florida Statutes. It is to no avail to resort to Section 800.04, Florida Statutes, F.S.A., for in that section reference is made to handling, fondling, or assaulting a child under the age of fourteen "in a lewd, lascivious or indecent manner" and to knowingly commit "any lewd or lascivious act" in the presence of such child, etc. It would be, of course, difficult or impossible to detail in a statute book all the acts which would constitute lewd and lascivious behavior, but there is a large body of case law on the meaning of the words "lewd" and "lascivious" (see, for instance, the numerous decisions under these words in Vols. 24 and 25 of Words and Phrases). Generally speaking, however, these words, when used in a statute to define an offense, usually have the same meaning, that is, an unlawful indulgence in lust, eager for sexual indulgence. See McKinley v. State, 33 Okla. Cr. 434, 244 P. 208.
Our Supreme Court has had occasion to define these two words in their various forms in Luster v. State, 23 Fla. 339, 2 So. 690; Pinson v. State, 28 Fla. 735, 9 So. 706; Holton v. State, 28 Fla. 303, 9 So. 716; Thomas v. State, 39 Fla. 437, 22 So. 725; Penton v. State, 42 Fla. 560, 28 So. 774; Whitehead v. State, 48 Fla. 64, 37 So. 302; Faulkner v. State, 146 Fla. 769, 1 So.2d 857; and Boles v. State, 158 Fla. 220, 27 So.2d 293.
The question whether the Child Molester Act created the new crime of "lewd and lascivious behavior" is not pertinent here. The crimes alleged and proven in this case were that the appellant committed a certain lewd and lascivious act in the presence of a female 13 years of age and of fondling the female in a lewd and lascivious manner. Since these offenses were crimes under Section 800.04, Florida Statutes, F.S.A., even absent the Child Molester Act it cannot correctly be said that the Child Molester Act purported to create a new crime, so far as this appellant is concerned. Whether the Child Molester Act validly or invalidly created a new crime of "lewd and lascivious behavior", while an important consideration in an appropriate case, is therefore not material here.
As said before, the appellant filed his petition for writ of habeas corpus in the Circuit Court for Union County, in which county the State prison is located. In that court's order, which is appealed from herein, the judge said:
"It is obvious that counts two and three of the informations were based on Chapter 800.04, Florida Statutes; that the sentence imposed by the Court *58 was based on Chapter 801.03 [1] (a), Florida Statutes.
* * * * * *
"It is the opinion of the Court that counts two and three of the information charged only one offense under Section 800.04. Consequently, the maximum sentence imposed could not exceed ten years in the state prison.
"It is the further opinion of the Court that Petitioner should be remanded to the Circuit Court for Marion County, Florida, for proper sentencing; however, this Court has no authority to compel such procedure. For that reason, the Court is of the opinion that the Petition for a writ of habeas corpus should be denied with leave granted to Petitioner to file an appeal so that if this Court's contention is correct, the appropriate appellate court could, with propriety order the Petitioner remanded for proper sentencing."
These holdings were challenged in the appellees' cross assignment of error.
The Circuit Court then held that the petition for a writ of habeas corpus be denied; that the petitioner be declared to be insolvent and the cost of that proceeding should be paid by Union County, Florida; and that the petitioner be allowed an appeal.
We cannot agree with the statement in the quoted order that counts 2 and 3 of the information charged only one offense. Of course, it is possible that this is so, but it is not necessarily so. It is true that both the second and third counts of the information charged that the lewd and lascivious acts occurred on January 8, 1956, but it does not necessarily follow that the acts charged in both counts constituted but one transaction. It is quite possible that the acts charged in the second count constituted an entirely different transaction from the acts charged in the third count, even though both acts were alleged to have occurred within the same twenty-four hour period. The record does not reveal that there was any evidence taken before the Circuit Court for Union County and so all that court had to consider on this question was the language in the information, and we hold that the information does not show that the acts charged in the second and third counts constituted but one transaction.
The rule is sound, of course, that a person should not be punished twice for but one crime. If, then, evidence showed that the acts charged in counts 2 and 3 were but phases of the same crime, then there can be but one punishment. In other words, in the present case if it is established that the acts charged in counts 2 and 3 constituted simply phases of one crime, the maximum sentence that could lawfully be imposed upon the appellant was twenty-five years in the state prison. In this connection it may be noted that in its judgment and sentence the Circuit Court for Marion County sentenced the appellant to twenty years in the state prison under the conviction of the second count and twenty years imprisonment in the state prison for his conviction under the third count, and it was in this court that the testimony was taken at the trial.
We, therefore, affirm that part of the order of the Circuit Court for Union County appealed from denying the petition for writ of habeas corpus, and reverse that order in the other respects conflicting with the views expressed herein.
We therefore affirm that part of the order of the Circuit Court for Union County appealed from denying the petition for writ of habeas corpus, and direct the respondents or the State Division of Corrections to forthwith deliver petitioner, together with a certified copy of this opinion and the mandate thereon, before the Judge of the Circuit Court for Marion County who entered the judgment and sentence here under attack with directions to the trial court, upon consideration of the evidence *59 adduced during the trial of this case, to determine whether defendant is guilty of only one or of two separate and distinct offenses as defined herein, and if necessary to enter an appropriate judgment in accordance with such findings.
Affirmed in part and reversed in part.
WIGGINTON, J., concurs.
STURGIS, C.J., dissents.
STURGIS, Chief Judge (dissenting).
Edward Buchanan petitioned the Circuit Court of Union County for a writ of habeas corpus testing the legality of his detention as a state prisoner pursuant to a conviction and sentence in the Circuit Court of Marion County.
The Honorable Geo. L. Patten, Circuit Judge, entered an order thereon, by which it was recognized that there was merit in certain phases of the petition, but correctly determined that the Circuit Court of Union County was without authority to compel the Circuit Court of Marion County  a court of equal jurisdiction  to obey any mandate it might issue, and thereupon made appropriate provision to insure this review.
In Anglin v. Mayo, Fla., 88 So.2d 918, 919, our Supreme Court, speaking through Mr. Justice Thornal, aptly said:
"The procedure for the granting of this particular writ [habeas corpus] is not to be circumscribed by hard and fast rules or technicalities which often accompany our consideration of other processes. If it appears to a court of competent jurisdiction that a man is being illegally restrained of his liberty, it is the responsibility of the court to brush aside formal technicalities and issue such appropriate orders as will do justice. In habeas corpus the niceties of the procedure are not anywhere near as important as the determination of the ultimate question as to the legality of the restraint."
Apparently adhering to the principles announced therein, this court has treated the cause in like manner as if the appellant had initially filed the petition herein. However, for reasons that are not stated and which I do not understand, the majority hold that the Circuit Court of Union County properly denied the petition for writ of habeas corpus filed therein, yet "affirms in part and reverses in part" the order of denial.
The conviction and sentence were based upon an information containing three counts, the second and third of which charged an offense as defined by Section 800.04, Florida Statutes (1955), F.S.A., which is repeated in order to keep my observations in proper perspective:
"800.04 Lewd, lascivious or indecent assault or act upon or in presence of child.

"Any person who shall handle, fondle or make an assault upon any male or female child under the age of fourteen years in a lewd, lascivious or indecent manner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without intent to commit rape where such child is female, shall be deemed guilty of a felony and punished by imprisonment in the state prison or county jail for not more than ten years." Laws 1943, c. 21974, § 1, as amended Laws 1951, c. 26580, § 1.
The first count, upon which a verdict of not guilty was returned, charged appellant with having assaulted a female thirteen years of age in an attempt to have sexual intercourse with her. This count appears faulty for reasons that do not, in view of the acquittal thereon, require discussion. I allude to it in order to make clear my later discussion of one of the grounds of the petition.
*60 The second count, upon which appellant was convicted, charged that on the same date as stated in the first count he committed a lewd and lascivious act in the presence of the same female; and the third count, upon which he was also convicted, charged that on the same date he handled and fondled the same female in a lewd and lascivious manner. The trial judge imposed a sentence of twenty years imprisonment for each conviction, the terms to run consecutively.[1]
The petition for writ of habeas corpus contends: 1. That acquittal of the offense charged by the first count of the information precluded conviction of the offenses charged by the second and third counts because the results are inconsistent. 2. That the second and third counts are each insufficient to charge appellant with any crime. 3. That the second and third counts relate to one and the same offense, so that the convictions on both amount in fact and in law to a single conviction. 4. That the sentences imposed are unlawful.
Each count of an information or indictment is regarded as a separate indictment and consistency in the verdict is not necessary. Goodwin v. State, 157 Fla. 751, 26 So.2d 898; Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; Steckler v. United States, 2 Cir., 7 F.2d 59. This court will not reverse a judgment of conviction unless upon examination of the entire record error is revealed that "injuriously affected the substantial rights of the appellant," and the mere existence of error does not raise a presumption to that effect. F.S. Sec. 924.33, F.S.A.
I fully agree with the conclusion of the majority that each of the counts upon which the convictions are based sufficiently charges the offense defined by Section 800.04, and it is my position, further, that under the laws of the state the information herein does not charge any crime other than that defined by that section.
The acts charged by each count are inherently lewd and lascivious when committed in the presence of, upon, or with a child under fourteen years of age. It must be then determined whether the second and third counts, of which appellant was convicted, charge separate offenses under the Act. I agree with the conclusion of Patten, J., that they do not and think it is improper procedure to refer the matter to the judge who presided at the *61 trial for his determination of the question because it is apparent and answerable on the face of the information. What if that judge be dead or, as is altogether likely, fails to remember the facts, or if there is no other source to supply them? Must the defendant, who, incidentally, was not and is not represented by counsel, be deprived of his constitutional rights simply because of the uncertainties of either of these situations? Is it not clear that evidence sufficient to convict a person of the offense charged by the third count of the information would necessarily be of such character as to warrant a conviction of the offense charged by the second count? My analysis of the act particularized in the second and third counts produces the inescapable conclusion that they are but separate incidents or links in a closely related and continuing chain of events, and that the facts charged in these counts, taken singly or collectively, admit of only one conviction and only one crime as defined by Section 800.04; and it follows that the separate convictions on these counts amount in fact and in law to a single conviction under the statute.
I am not unmindful of the general rule that in habeas corpus proceedings double jeopardy is not available to petitioner unless apparent on the face of the record (Deal v. Mayo, Fla., 76 So.2d 275). This case clearly falls within that rule. The error here is so fundamental as to have the effect of denying to appellant the essential requirements of the law, and his failure to register objection on the trial will not preclude this court from granting such relief as justice requires. Neither do I overlook or detract from the sound practice and procedure whereby several distinct crimes may be charged by several counts embodied in one information or indictment, and separate sentences imposed in respect to each count on which conviction results. Hearn v. State, Fla., 55 So.2d 559, 28 A.L.R.2d 1179; Stovall v. State, 156 Fla. 832, 24 So.2d 582; Green v. State, 134 Fla. 216, 183 So. 728. This rule must be interpreted, however, in the light of the language used in the information, and we must take notice of the equally common practice of charging in separate counts several factual versions of the same crime so that the probata will conform to the allegata, which was evidently and precisely done in this case.
Turning now to consideration of the punishment imposed, it is evident that the trial court based its sentence of twenty years imprisonment on each count on the provisions of chapter 801, F.S. (1955), F.S.A., known as the Child Molester Act, the pertinent portion of which reads as follows:
"801.02 Definitions

"An offense under the provisions of this chapter shall include * * * lewd and lascivious behavior * * * when said acts are committed against, to, or with a person fourteen years of age or under." (Emphasis supplied.) Laws 1951, c. 26843, § 2, as amended Laws 1953, c. 28158, § 1; Laws 1955, c. 29923, § 1.
"801.03 Powers and duties of judge after convictions

"(1) When any person has been convicted of an offense within the meaning of this chapter it shall be within the power and discretion of the trial judge to:
"(a) Sentence said person to a term of years not to exceed twenty-five years in the state prison at Raiford." (Emphasis supplied.) Laws 1951, c. 26843, §§ 3, 4, as amended Laws 1953, c. 28158, § 2, 3, 6.
If the provisions of this act do not apply, the punishment must be according to F.S. Section 800.04, F.S.A. which prescribes a maximum of ten years imprisonment.
The parent law out of which Section 800.04 was carved is chapter 21974, Laws of 1943, which was incorporated into the *62 Florida Statutes in 1945. It was amended to its present from by chapter 26580, Laws of 1951. These acts preceded the Child Molester Act which first appeared as chapter 26843, Laws of 1951, and was incorporated into the Florida Statutes in 1953. Hence, in order to affect the former, it was necessary for the latter to amend or revise it.
The quoted provisions of the Child Molester Act do not in themselves specifically define or identify "an offense under the provisions of" or "an offense within the meaning" of that act. It is necessary, therefore, to resort elsewhere  to other statutes  to discover what is meant by  indeed, to discover if there actually exists  an offense known as "lewd and lascivious behavior." Such an offense is not known to the common law, and the statutory law of Florida does not define such a crime. It is only by speculation, and with a very cold trail to nose on, that one might conclude that the above emphasized language of Sections 801.02, 801.03 has any relation to Section 800.04, and even if we arrive at the latter we find no comfort, because it only defines the offense by the acts composing it, and omits to give the crime a name by which to be known, such as "lewd and lascivious behavior." There is no question of simple semantics in this situation, but rather of the substantive right of the citizen to be provided with clear and understandable language in the statutes defining the crimes  constituting the law  which he, in peril of being subjected to involuntary servitude, is presumed to know.
The omnibus bills that generally revise the statutory law, and which are introduced at each regular session of the legislature, have a special function and are clothed with the limitations set forth in F.S. Section 16.44, F.S.A. The function of such bills and the limitations of the statute are strictly construed to the end that a bill generally revising the statutory law may not be used as a vehicle for modifying the substantive law or the construction or meaning of the statutes. This rule of construction is highly important to observe because in the legislative process contemplated by Section 16.44 there lies a fertile field and tempting opportunity for the legislative will to be subverted. It is recognized that because of the salutory safeguards and limitations of the statute, which circumscribes the nature and function of the omnibus bill covering revision of the statutes as a whole, the legislature is inferentially excused from giving to such bills  one in number at each session  that type of deliberate attention and consideration that is given to the enactment of laws that are not clothed with such protective features. Indeed, it is significant that Article III, Section 17, Constitution of Florida, contains a special provision whereby, contrary to the procedure governing other types of legislation, a bill generally revising the statutory law does not have to be read section by section upon final passage, and its reading may be wholly dispensed with by two-thirds vote of the house having it under consideration. This special treatment is evidently for the convenience of the legislature in handling such bulky legislation, and inferentially takes cognizance of the fact that such measures do not modify the substantive law, its construction or meaning; all of which makes more imperative a strict construction of Section 16.44. There are multiple reasons why the courts should never relax the statutory provisions governing such legislation, as in my opinion is the effect of the controlling decision herein.
Aside from the above consideration, the provisions of the Child Molester Act are on constitutional grounds inapplicable to F.S. Section 800.04, F.S.A. Neither the original act (c. 26843, Laws 1951) nor the 1953 act incorporating it as part of the Florida Statutes meets the constitutional requirements of Article III, Section 16, Constitution of Florida, governing the enactment of a law that has the effect of amending or revising an existing law, viz.:
"Each law enacted in the Legislature shall embrace but one subject and *63 matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised (by reference) to its title only; but in such case the act as revised or section, or subsection of a section, or paragraph of a subsection of a section, as amended, shall be re-enacted and published at length." (Emphasis supplied).
The legislature has power, of course, at any time to enact a law that within its four corners redefines a crime that already appears in the statutes, and in such law to fix a greater penalty than that imposed by the prior statute. However, F.S. chapter 801, F.S.A. did not reenact or purport to repeal F.S. Section 800.04, F.S.A., nor did it reenact or publish at length those provisions of that section prescribing the punishment for the offense therein defined. In view of the constitutional requirements, these considerations render inoperative any provision of chapter 801 which purports to modify or change the punishment so prescribed. See Copeland v. State, Fla., 76 So.2d 137. Indeed, incorporation of an act in a general revision of the statutes does not cure the act of any unconstitutionality of its content. State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804. By the same logic, any legislative undertaking to revise or amend an existing law, including those contained in Florida Statutes, must reenact and publish at length the revised section, subsection of a section, or paragraph of a subsection of a section.
I am convinced that appellant was duly convicted of the felony defined by Section 800.04, Florida Statutes (1955), F.S.A., for which he became and remains subject to punishment by imprisonment in the state prison or county jail for not more than ten years. I would affirm the action of the Circuit Court of Union County denying the petition for writ of habeas corpus filed therein, and would treat the appeal as an original petition in this court for a writ of habeas corpus; and thereupon I would set aside the sentences heretofore imposed upon petitioner and direct appellee to present the appellant before the Circuit Court of Marion County for resentencing in accordance herewith. I would also direct that the appellant be credited against the sentence with the period of time during which he has been imprisoned pursuant to the sentences that were unlawfully imposed.
For the reasons stated I respectfully dissent.
NOTES
[1] The body of the information is as follows:

"A.P. Buie, State Attorney for the Fifth Judicial Circuit of Florida in and for Marion County, under oath, information makes that Edward Buchanan late of the County of Marion and State of Florida, on the 8th day of January in the Year of Our Lord One Thousand Nine Hundred and 56, with force and arms at and in the County and State aforesaid, did unlawfully make an assault upon * * * a female person, of the age of 13 years and did then and there attempt to have sexual intercourse with the said * * *.
"Second Count
"And the State Attorney aforesaid, upon his oath aforesaid, further information makes that Edward Buchanan, late of the County of Marion and State of Florida, on the 8th day of January, 1956, at and in the County and State aforesaid, did unlawfully and without intent to rape, did knowingly commit a lewd and lascivious act in the presence of * * *, a female child, of the age of 13 years by forcing her to take off her clothes and he, the said Edward Buchanan, then and there take out his penis and attempting to have sexual relations with said child.
"Third Count
"And the State Attorney aforesaid, upon his oath aforesaid, further information make that Edward Buchanan late of the County of Marion, State of Florida, on the 8th day of January, 1956, at and in said County and State, unlawfully and without any intent to rape one * * *, a female child of the age of 13 years, did unlawfully handle and fondle the said * * * in a lewd and lascivious manner by playing with her vagina with his hands and fingers, contrary to the form of the Statute in such cases made and provided and against the Peace and Dignity of the State of Florida."